IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

MIGUEL JIMENEZ-JIMENEZ,

Plaintiff,

v.

INTERNATIONAL HOSPITALITY
GROUP, INC./CASINO DEL SOL

Defendant.

CIV. NO.: 15-1461 (SCC)

**OPINION AND ORDER**

Plaintiff Miguel Jiménez-Jiménez worked as a dealer, or
"croupier" in Casino del Sol, a casino owned and operated by
defendant International Hospitality Group ("IHG"). Jimenez
claims to suffer from a severe allergic condition that is
triggered by some perfumes and chemicals. Jimenez sought
reasonable accommodation from his employer to deal with

his condition. After his employer allegedly denied his request, he filed suit against IHG, claiming that he suffered discrimination and retaliation due to his disability. He also alleges that he was constructively discharged from his employment.

IHG moved for summary judgment. Having examined the parties' arguments, I conclude that plaintiff has not made a sufficient showing that his condition rendered him disabled within the meaning of the ADA and that IHG cannot reasonably accommodate Jiménez' disability, therefore, summary disposition of his claims is proper.

## I.  Background

Jiménez sued his employer, IHG, under the American with Disabilities Act ("ADA"), and Puerto Rico's Law 115 of December 20, 1991 and Law No. 44 of July 2, 1985. *See* the Complaint at Docket No. 1, the Amended Complaint at Docket No. 9, and the Second Amended Complaint at Docket No. 35. Jiménez also seeks redress under Puerto Rico Law No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29 §288(7).

IHG filed a motion for summary judgment, arguing that Jimenez failed to exhaust administrative remedies; cannot show that he has a disability covered under the ADA; cannot show that he is substantially limited in the performance of a major life activity; cannot show how a reasonable accommodation would have allowed him to perform the essential duties of his job; cannot show that IHG did not reasonably accommodate his disability; cannot show a causal connection between engaging in a protected activity and the adverse employment action; and cannot show that IHG created a hostile work environment that led to his constructive discharge. *See* Docket Nos. 44 and 47.

Jiménez filed an opposition. Docket Nos. 57 and 58. IHG replied. Docket No. 70.

IHG also moved to strike a declaration signed by Jiménez in support of his opposition to IHG's Motion for Summary Judgment. Docket No. 71. The Court granted in part, and denied in part, the request. Docket No. 80.

## II. Factual Findings

The following factual findings are taken from the parties' statements of uncontested facts ("SUF") and supporting documentation. In accordance with Local Rule 56, the court credits only facts properly supported by accurate record citations. *See* Local Rule 56(e). The court has disregarded all arguments, conclusory allegations, speculation, and improbable inferences disguised as facts. *See Forestier Fradera v. Municipality of Mayaguez*, 440 F.3d 17, 21 (1st Cir.2006); *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

The court finds that the following facts are uncontested:

1. IHG is a company that operates a duly licensed gaming casino commercially known as Casino del Sol (the "Casino"). *See* Docket No. 44-2, Declaration of Guillermo Márquez at ¶ 2, attached hereto as Exhibit 1 (hereinafter "Márquez Declaration").[1]

2. The Casino operates on leased premises located within the main lobby of the Courtyard Isla Verde Beach Resort, a hotel in Carolina, Puerto Rico. *See* Márquez

---

[1] Plaintiff admitted SUFS 1-15. *See* Docket No. 57-1.

Declaration at ¶ 3.

3.  The premises of the Casino are located in the northeast side of the hotel lobby. *See* Márquez Declaration at ¶ 4.

4.  The Hotel provides the air conditioning system for the Casino which is shared with the lobby and the rest of the entertainment venues located in the Hotel's first floor. *See* Márquez Declaration at ¶ 5.

5.  The Casino operates 24 hours a day, seven days a week, and features a number of slot machines and gaming tables. Over 300 people visit the Casino daily; with the largest number coming in on weekends. *See* Márquez Declaration at ¶ 6.

6.  During relevant times, the Casino employed less than 100 employees. *See* Márquez Declaration at ¶ 7.

7.  The Casino's operations are licensed and regulated by the Gaming Division of the Government of Puerto Rico. *See* Márquez Declaration at ¶ 8.

8.  The Casino is also subject to direct supervision of an outside Inspector. This is a government employee appointed by the Gaming Division and tasked to supervise and enforce the gaming laws and regulations in casinos. Inspectors work on premises

and wield considerable authority over an array of operational and compliance issues, including monitoring and controlling gaming tables and slot machines. The Casino's manager must obey the decisions of the Inspector over any matter relating to a game or an activity within a gaming area. *See* Márquez Declaration at ¶ 9.

9. Guillermo Márquez is the General Manager of the Casino. He oversees all operations of the Casino. He also oversees all Human Resources functions and is the only person authorized to hire or fire an employee at the Casino. *See* Márquez Declaration at ¶ 2.

10. The General Manager is assisted by shift managers. There are three shift managers. One covers the 12:00 noon - 8:00 p.m. shift and the other the 8:00 p.m. - 4:00 a.m. shift. A third manager rotates covering the other two managers' days off. The 4:00 a.m. – 12:00 noon shift does not have a shift manager. Instead, the Cage Manager supervises it. *See* Márquez Declaration at ¶ 10.

11. Angel Castrodad was, during relevant times, the Shift Manager assigned to the 12 noon-8:00 p.m. shift. *See*

Márquez Declaration at ¶ 11.

12. Jeffrey Chernoff was, during relevant times, the Shift Manager assigned to the 8:00 p.m.- 4:00 a.m. shift. *See* Márquez Declaration at ¶ 12.

13. Shift Managers oversee the casino activities during an assigned shift. They are tasked with ensuring total customer satisfaction and operational efficiency. Most of the time is spent on the "floor" of the Casino and the gaming and customer service areas, closely interacting with employees and customers. *See* Márquez Declaration at ¶ 13.

14. Elvin Santana is a shift manager covering Chernoff and Castrodad days' off. He alternated between day (12:00 Noon – 8:00 p.m.) and night shift (8:00 p.m. – 4:00 am). *See* Márquez Declaration at ¶ 14.

15. During relevant times, the Casino operated with eight gaming tables daily from 12:00 noon to 4:00 a.m. There were three for black jack, two for poker, two for roulette and one for dice (also known as "craps"). There were also a number of slot machines. *See* Márquez Declaration at ¶ 15.

16. Dealers, also known as croupiers, assist and engage in

the gaming tables. There may be one or more dealers at a table depending on the gaming table. *See* Márquez Declaration at ¶ 17.[2]

17. The dice table is run with three dealers and the black jack with one. *See* Márquez Declaration at ¶ 18.

18. Dealers generally remain at the table where they are most skilled and may occasionally work in other table depending on their skillset and the needs of the Casino. *See* Márquez Declaration at ¶ 20.[3]

19. Dealers work for one hour and then rest for 20 minutes. There is at least one restroom that the employees can use. *See* Márquez Declaration at ¶ 21; *see also* Docket No. 57-2, Jiménez' Declaration under Penalty of Perjury, at ¶ 4.

20. The dealers are supervised by table supervisors who, in turn, report to the Shift Manager. A table supervisor may have up to three tables assigned during a given shift. *See* Márquez Declaration at ¶ 22.[4]

21. Employees at the Casino- particularly dealers and slot

---

2 Plaintiff admitted the statements contained in SUFs 16-17.
3 Plaintiff admitted this SUF.
4 Plaintiff admitted this SUF.

attendants- work directly with the public. They also have to meet particular physical demands while performing their duties. For example, table dealers spend their shift standing behind a table. *See* Márquez Declaration at ¶ 23; Jiménez Declaration at ¶ 5.

22. The Casino aims to portray a professional and neat image to its customers and has a set of guidelines for employees to follow. Among other things, it requires staff to "maintain their personal hygiene in an optimum level, thus preventing excessive sweat and disagreeable odors. The use of deodorant is imperative, only soft cologne and perfumes are allowed." *See* Márquez Declaration at ¶ 25.[5]

23. On February 11, 2009, IHG hired Jiménez. At the time of hiring he received the "Team Member's Handbook" and employment policies of IHG. He began actual work on February 14, 2009 and was immediately assigned to the dice table. *See* Márquez Declaration at ¶¶ 27-28; Docket No. 57-3, Jiménez Deposition, pg. 10, lines 6-12.

---

5 Plaintiff admitted this SUF.

24. The dice table operated from 4:00 p.m. to midnight, Sunday through Thursday, and from 6:00 p.m. to 2:00 a.m. on Fridays and Saturdays. *See* Márquez Declaration at ¶ 29.[6]

25. Although Jiménez knew the blackjack and roulette games, he did not consider himself to be "a very good roulette dealer." *See* Docket No. 57-3, Jiménez Deposition, pg. 14, lines 9-24.

26. At the end of his probationary period evaluation, Jiménez' supervisor, Jorge Valle, noted that he needed to develop himself in other table games and also show more interest in learning and developing new skills in the other games. *See* Márquez Declaration at ¶ 30.

27. Jiménez took 8 days of sick leave in July 2012. Upon returning, he presented a medical certificate stating that he had been suffering from "severe allergies from exposure to strong perfumes used by some of his co-workers." The doctor recommended minimizing the exposure due to his condition and one month of rest. *See* Medical Certificate at Docket No. 57-4.

---

6 Plaintiff admitted this SUF.

28. In September 2012, Jimenez presented a document dated September 13, 2012, and signed by Doctor Rafael Zaragoza-Urdaz. The document indicated that Jiménez was "found to be severely allergic to chemicals, including volatile organic compounds, formaldehyde, ethanol, phenol, orris root (perfumes)". Docket No. 57-5. The doctor recommended that plaintiff be offered a reasonable accommodation in an allergen-low environment, among other recommendations. *Id*.

29. Sometime afterwards, Jimenez approached Márquez and said that he was getting reactions from some of the scents of colognes/perfumes from coworkers that he perceived as "too strong" and he wanted Márquez to enforce the Casino's policy on soft colognes. This policy states as follows:

Personal Hygiene

All Team Members must maintain their personal hygiene in an optimal level, thus preventing excessive sweat and disagreeable odors. The use of deodorants is imperative, only soft colognes and perfumes are allowed.

*See* Márquez Declaration at ¶ 33.7; *see also* Docket No. 44-2, Exhibit D.

30. The next day after his meeting with Jiménez, Márquez met with Chernoff and Castrodad, his shift managers, to discuss the issues Jiménez had raised. Márquez instructed them to review the soft cologne/perfume policy with all the workers in the line-up meetings to make sure they were adhering to it. *See* Márquez Declaration at ¶ 34; Docket No. 44-3, Jeffrey Chernoff Declaration at ¶ 8, (hereinafter "Chernoff Declaration").

31. A lineup is a pre-shift meeting to brief staff on a particular event, review what is expected of them, and make sure they are ready to serve customers. During these meetings, employees are provided an opportunity to give feedback. *See* Chernoff Declaration at ¶ 9.[8]

32. In at least one of the lineups, the issue of enforcement of the "soft scents policy" was discussed. *See* Docket No. 44-4, Appx. 3, Jiménez Deposition, pg. 89, lines 12-

---

7 Plaintiff admitted the statements contained in this SUF.
8 Plaintiff admits the statements contained in this SUF.

25, pg. 90, lines 1-12; *see also*, Chernoff Declaration at ¶ 9.

33. In his deposition, Jiménez emphasized that the only accommodation he requested was to enforce the "light cologne" policy. *See* Jiménez Deposition, pg. 64, lines 5-25.[9]

34. Not all scents in the Casino bothered Jiménez and not all scents that bothered him allegedly triggered a reaction that needed adjustment. He claimed that the allergic reaction varied depending on the scent and its strength. He also indicated that the reactions were not necessarily immediate and that by moving away from the smell, he could remedy the situation. *See* Jiménez Deposition, pg. 173, lines 14-19, and pg. 174, lines 2-14.

35. According to Jiménez, he only got ill from some of his co-workers, not all of them. *See* Jiménez Deposition, pg. 161, lines 10-11, and page 95, lines 4-6.

36. Jiménez admitted in his deposition that in "very few" occasions he was bothered by a scent from a casino guest, and in those occasions, he would move away

---

9  Plaintiff admitted this SUF.

from the customer. *See* Jiménez Deposition, pg. 160, lines 9-23.

37. After Jiménez' meeting with Márquez, Chernoff noticed that Jiménez complaints were more frequent but still sporadic; meaning that several weeks or a month could go by without a complaint. *See* Chernoff Declaration at ¶ 10.10.

38. In case Jiménez found any disagreeable scents in the regular break-room, Jiménez was provided an alternative break-room. *See* Chernoff Declaration at ¶ 21; Docket No. 44-4, Jiménez Deposition at pg. 97, lines 20-25.

39. The nature and frequency of Jiménez' complaints and requests differed. Sometimes, he just signaled to a supervisor that a fragrance was bothering him but did not request an immediate adjustment. Other times, he commanded immediate adjustments from his supervisors to avoid smelling a particular scent that he alleged was rapidly making him ill. Other times, Jiménez' complaint did not go beyond his objection to

10 Plaintiff admitted the statements contained in this SUF.

a particular scent which could surface in the break-room or in the gaming area. *See* Chernoff Declaration at ¶ 25.[11]

40. Circumstances at the Casino vary constantly in terms of number of: visitors, players, tables in play, dealers in the floor or at break, dealers skilled at a particular game, among many other circumstances. There are hundreds of visitors at the Casino every day. *See* Chernoff Declaration at ¶ 26.[12]

41. To relieve Jiménez so that he could take an unscheduled rest or to relocate the employee whose scent was bothering him, supervisors had to identify a replacement to substitute the employee. The same thing happened if Jiménez took a break. This arrangement was only possible if there was a table that only required one dealer to operate who happened to be qualified to play dice or the game of the dealer he/she was going to relieve; and at that moment there

---

11 Though Jiménez objected to this SUF, he did not provide a record citation to support his opposing statement, as required under Local Rule 56(c).

12 As with the previous SUF, Jimenez' opposing statements was not properly supported by a record citation.

were no clients playing at the table. *See* Chernoff Declaration at ¶ 29.

42. Jiménez' pay was never materially affected. *See* Chernoff Declaration at ¶ 35; Márquez Declaration at ¶ 49.

43. Jiménez acknowledged at deposition that the Casino would provide an adjustment when he complained of a particular scent. *See* Jiménez Deposition at pg. 174, lines 9-12.

44. Jiménez also acknowledged in his deposition that, whenever he felt ill, he would be sent to rest at the breakroom until an adjustment could be made in the Casino area. *See* Jiménez Deposition, at pg. 174, lines 2-25; pg. 175, lines 1-4.

45. According to Chernoff, during the latter half of 2014, Jiménez had turned more vocal about his complaints. *See* Chernoff Declaration at ¶ 37.

46. In mid- 2014, Jiménez complained about the scent of a urinal screen used in a bathroom stall. The product was replaced by Chernoff himself when Jiménez complained. No complaints were received again. *See* Chernoff Declaration at ¶ 38.

47. From October 2014 on, Chernoff noticed that Jiménez'
grievances with scents were generally limited to the
fragrances worn by one or two women, mostly another
employee named Vanessa Torrens. *See* Chernoff
Declaration at ¶ 37.[13]

48. Jiménez admitted that most of the incidents revolving
scents that made him ill involved Ms. Torrens. *See*
Jiménez Depo at pg. 166, lines 5-25, pg. 170, lines 1-11.

49. Jiménez admitted that in December 14, 2012, he was
given counseling for failing to register his meal period
in 26 instances. *See* Jiménez Deposition, pg. 120, lines
9-21.

50. IHG's policies require employees to register their time,
including meal periods, through the Casinos' official
time and attendance system. *See* relevant pages of the
employee handbook attached to Docket No. 44-4,
Appx. No. 046-047.

51. On September 28, 2013, Jiménez was involved in an
incident with his direct supervisor in which he threw
on the table his casino license and left the work area

---

13  Plaintiff admitted the statements contained in this SUF.

without authorization. Chernoff met with Jimenez and gave him a verbal counseling, which he recorded in writing. *See* Chernoff Declaration at ¶19.

52. Abandoning a work area during a shift, unless authorized by a supervisor/manager is a serious violation that can be sanctioned by immediate termination. *See* Docket No. 44-4, Portions of Employee Handbook, Appx. No. 043-044.

53. Courtesy and respect are one IHG's written standards and part of the Team Member's Handbook. It states among other things, the following:

> Courtesy and Respect: In a business as competitive as ours, it is not enough to offer the best possible service. The same has to be complemented with efficient, respectful, courteous and attentive service by our team members to our clients, visitors and the general public.
>
> Regardless of your assigned work area; you will always have to interact with clients, visitors and the general public. Your behavior, as well as your attitude, will be the image they will receive of our Company.
>  . . . .

> You must conduct yourself at all times with respect, courtesy and professionalism. Should any difficulty arise, you must observe the highest degree of tolerance and if you feel you can't handle the situation, you must kindly refer it to your supervisor/manager.

*See* Docket No. 44-4, Portions of Employee Handbook, Appx. No. 045.

54. On January 25, 2014, Jiménez was given a verbal counseling by Elvin Santana, a supervisor, because he had failed to show up for work, or call to excuse his absence. *See* Márquez Declaration at ¶ 39.[14]

55. On April 30, 2014, Jiménez acknowledged that he had received updated copies of the Casino's "Team Member's Handbook" and "Our Policies" booklet. *See* Márquez Declaration at ¶ 40.

56. Chernoff interviewed employees Johnny Ramos, Dina Mercado and Vanessa Torrens regarding their interactions with Jiménez. *See* Chernoff Declaration at ¶ 41.

---

14 Jiménez objected the statements contained in this SUF because of "irrelevancy", but did not challenge the veracity of the information contained therein.

57. On November 27, 2014, Ms. Torrens filed a written complaint regarding an incident in which she had been removed from her table because Jiménez had indicated that her scent was making him ill. She was bothered by the fact that earlier that day, Jiménez had spent at least 20 minutes interacting with her during a scheduled break, and had raised no complaints. She was concerned that in IHG' eagerness to accommodate Jiménez, she was being relegated to a distant area and her performance and work environment were being affected despite the fact that she knew most of the games in the Casino. *See* Márquez Declaration at ¶ 43.

58. On November 28, 2014, Jiménez filed a disability discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). It was received at the Casino on December 3, 2014. *See* Docket No 44-2, EEOC Charge, Appx. 08, and Márquez Declaration at ¶ 44.[15]

59. According to Márquez, the charge took him by surprise. Márquez personally handled the charge with

---

15  Plaintiff admitted the statements contained in this SUF.

the assistance of the Casino's attorney. Márquez claims
that he was not notified of any meeting or
administrative hearing, until he received a copy of a
right-to-sue letter issued by the EEOC to Jiménez. *See*
Márquez Declaration at ¶ 45.

60. On February 8, 2015, Chernoff gave Jiménez a verbal
orientation regarding an incident during which he
wanted Chernoff to move another dealer away from
him because her scent was bothering him. Chernoff
recorded his conversation with Jiménez in writing. *See*
Chernoff Declaration at ¶ 43.

61. On March 8, 2015, Castrodad gave Jiménez another
verbal counseling regarding a missing medical
certificate. *See* Márquez Declaration at ¶ 46.

62. The next day, Jiménez responded to Castrodad's
verbal counseling and copied Márquez. *See* Docket No.
57-8, Letter of March 9, 2015; *see also*, Márquez
Declaration at ¶ 47.

63. On March 18, 2015, Márquez replied to Jiménez. In his
response, Márquez explained the role of a shift
manager and the rule regarding sick leaves and
medical certificates. He also explained to Jiménez

why he was given a verbal counseling. Márquez also cautioned Jiménez from hurling false or malicious accusations. *See* Márquez Declaration at ¶ 47.

64. On March 31, 2015, the EEOC issued a Notice of Right to Sue letter in the case filed by Jimenez because the Investigator found it unlikely that the EEOC would be able to complete the administrative processing within 180 days from the filing of the charge. *See* Docket No. 44-2 at Appx. 09.

65. On May 14, 2015, Jiménez presented a letter of resignation effective May 15, 2015. *See* Márquez Declaration at ¶ 48; Jiménez Declaration at ¶ 43.

66. After presenting the letter, Jiménez worked at his assigned table until he completed his shift. During that shift, he "told the guys . . . he was resigning." *See* Docket No. 44-4, Appx. No. 013-014, Jiménez Deposition, pg. 131, lines 21-25; pg. 132, lines 1-25.

67. IHG's Employee Manual states that IHG is committed to having workers being treated justly and respectfully and establishes a process to secure those rights. Employees that have a complaint are expressly authorized and instructed to initiate their grievance

with their immediate supervisor; if the employee is unable to obtain the necessary help, he or she then proceeds go to the manager and if still the employee is not satisfied, the manager will coordinate a meeting with the General Manager. *See* Márquez Declaration at ¶ 52.

68. Jiméenez was asked in his deposition what was the basis for claiming that he suffered retaliation. He stated the following: (i) that the company began to "make him a file" after he filed the EEOC charge; (ii) that he got admonished whenever he complained about scents; (iii) that his employer was "rude" to him; (iv) that his employer was "pushing him" to "make him angry" so that he would resign. *See* Docket No. 44-4, Appx. No. 015-018, Jiménez Depo, pg. 138, lines 19-25, pg. 140, lines 1-10.

69. When asked to explain what he meant by "making a file" and "being admonished," Jiménez specified two documents: a record of conversation from February 8, 2015, and the advice and counseling of March 8, 2015. *See* Jiménez Depo, pg. 140, lines 12-25, pg. 141, lines 1-14, pg.142, lines 1-6.

70. Before joining IHG, Jiménez worked at another Casino, Casino del Mar, for several months. He indicated that during that time, he did not experience any kind of issues with perfume scents. And prior to that, while he worked at the Diamond Palace Hotel, he only experienced problems with perfumes "a few times." *See* Jiménez Depo, pg. 47, lines 2-25, pg. 48, lines 1-10, included in Docket No. 44-4, Appx. No. 003-004.

71. Jiménez currently works at a beach paddle business. *See* Docket No. 44-4, Appx. No. 049, Jiménez Depo, pg. 24, lines 18-23.

72. According to Jiménez, his condition is triggered "only when he is exposed to strong odors and strong perfumes and colognes." Docket No. 57-2, Jiménez' Declaration at ¶ 8.

73. Pursuant to a medical certificate dated July 7, 2012, Jiménez suffers from "severe allergy to exposure to strong perfumes used by some of his co-workers." Docket No. 57-4.

### III. Analysis

The ADA prohibits discrimination in the workplace against an otherwise qualified person with a disability, unless

the employer can demonstrate that the accommodation would impose an undue hardship on the employer's business. 42 U.S.C. § 12112(b)(5)(A); *U.S. Airways, Inc., v. Barnett*, 535 U.S. 391, 400 (2002). "Discrimination in violation of the ADA includes, inter alia, 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92, 96 (2nd Cir. 2009); 42 U.S.C. § 12112(b)(5)(A). Jiménez' claims are based on this modality.

To survive summary judgment on his "reasonable accommodation" claim, Jiménez has to produce enough evidence for a reasonable jury to find that (1) he is disabled within the meaning of the ADA, (2) he is able to perform the essential functions of the job with or without a reasonable accommodation, and (3) IHG, despite knowing of his disability, did not reasonably accommodate it. *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 107 (1st Cir. 2005)(citing *Estades–Negroni v. Associates Corp. of North America*, 377 F.3d 58, 63 (1st

Cir.2004)).

**(1) Discrimination Due to Disability**

**(i)     Whether Jiménez is disabled within the meaning of the ADA**

A plaintiff seeking protection under the ADA is required to show that he is a qualified individual,[16] with a condition that substantially limits one or more major life activities. *Carroll v. Xerox Corp.*, 294 F.3d 231, 240 (1st Cir. 2002).

Jiménez describes his disability as "a severe allergic condition that makes him sensitive to the smell and breathing of some perfumes and chemicals." [17] He argues that the disorder substantially limits him in performing the major life activities of "breathing, eating, concentrating, smelling, touching and interacting with others". *Id.*[18]

---

16 A qualified individual is one who "with or without reasonable accommodation, can perform the essential functions of" the relevant position. 42 U.S.C. § 12111(8).

17 *See* Second Amended Complaint, Docket No. 35, at ¶ 14.

18 Examples of major life activities are: caring for oneself; performing manual tasks; walking; seeing; hearing; speaking; breathing; learning; and working. This list, however, is not meant to be comprehensive. 29 C.F.R. § 1630.2(i).

The ADA recognizes breathing and respiratory functions as major life activities. *See* 42 U.S.C. § 12102(2)(A), *see also* 29 C.F.R. § 1630.2(i)(1)(I)-(ii). However, IHG asserts that Jimenez is not disabled within the meaning of the ADA because his impairment only manifests when he is exposed to an allergen at work, and not in other environments. IHG also states that Jiménez has not presented admissible medical evidence to supports his disability claim.

At this stage, the burden is on Jiménez to show that he suffers a condition which makes him unable, or significantly restricted in his ability to perform a particular major life activity. *See* 42 U.S.C. § 12102(2)(A). Jiménez must also show that he has a record of the impairment, or that his employer regards him as having such an impairment. *Id.*; *see also Schapiro v. New York City Dept. of Health*, 25 Fed.Appx. 57, 60-61 (2nd Cir. 2001).

We have surveyed the case law focused on plaintiffs with respiratory conditions and found several where courts held that individuals suffering from respiratory sensitivity to

airborne agents did not show a substantial limitation on the major life activity of breathing within the meaning of the ADA. *See*, *Schapiro*, 25 Fed.Appx. at 61 (finding that plaintiff "did not offer sufficient evidence of respiratory problems outside of his work activity", and, therefore, failed to establish that his physical impairments substantially limited him in the major life activities of either breathing or working); *Keck v. New York State Office of Alcoholism & Substance Abuse Services*, 10 F.Supp.2d 194, 200 (N.D.N.Y. 1998)(held that plaintiff did not allege specific instances of difficulty breathing outside of work context and noted that several cases "support the conclusion that failure to allege specific evidence of the extent to which other jobs are foreclosed by smoke sensitivity is generally fatal at the summary judgment stage"); *López-Cruz v. Instituto de Gastroenterología de PR*, 960 F.Supp.2d 367, 371 n. 8 (D.P.R. 2013)(citations omitted)(recognizing that "[a] number of courts conclude that an individual does not suffer a disability when an impairment only manifests itself when the individual is exposed to an allergen at work."); *Watson v.*

*Hughston Sports Medicine Hospital*, 231 F. Supp. 2d 1344, 1349 (M.D. Ga. 2002)(Court found that a registered nurse with a severe latex allergy was not substantially limited in the major life activity of breathing, within the meaning of the ADA).

The record shows that Jiménez has suffered from his allergic condition since 1991. Docket No. 57-2 at ¶ 47. In describing his condition, Jiménez himself explained that he "did not get sick with all the co-workers" and only "with the strong odor fragrances and the employees who used perfumes with strong odors." Docket No. 57-2 at ¶ 11. Furthermore, it is uncontested that prior to joining Casino del Sol, Jiménez had worked at Diamond Palace Hotel, where he only experienced problems with perfumes "a few times", and at Casino del Mar, where he did not experience any kind of issues with perfume scents.

By definition, an individual is "substantially limited" in his ability to carry out a major life activity when he is "(i) unable to perform a major life activity that the average person in the general population can perform; or (ii) is significantly

restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1).

Having reviewed the record, we have found no evidence that Jiménez' condition was triggered outside of his place of employment. Therefore, the plaintiff has not made a sufficient showing that his condition rendered him disabled within the meaning of the ADA.

Nevertheless, even if Jiménez had shown that he is disabled within the confines of the ADA, the Court cannot conclude that a material and genuine issue exists with regard to the question of whether he is a qualified individual under the Act.

(ii)    **Whether Jiménez is a qualified individual under the ADA**

In order to be a "qualified individual" under the Act, the burden is on the employee to show: first, that he possesses the

requisite skill, experience, education and other job-related requirements for the position, and second, that he is able to perform the essential functions of the position with or without reasonable accommodation. *García-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 646 (1st Cir. 2000); see also 29 C.F.R. § 1630.2(m).

A review of the record shows that Jiménez possesses the skill, experience and education to fulfill the requirements of the position.

Our inquiry therefore concerns only whether Jiménez made a sufficient showing that, with reasonable accommodation, he could perform the essential functions of the relevant job and that IHG failed to make the appropriate accommodations. A reasonable accommodation may include, *inter alia*, restructuring of job duties and schedules, modification of the facilities in which a job is performed, and "reassignment to a vacant position." 42 U.S.C. § 12111(9)(B).

The plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that

would allow him to perform the essential functions of his employment. *See Feliciano v. State of R.I.*, 160 F.3d 780, 786 (1st Cir. 1998); *Mulloy v. Acushnet Co.*, 460 F.3d 141, 147 (1st Cir. 2006) (citing *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 25 (1st Cir. 2001)). However, the failure to make a reasonable accommodation will not be considered discrimination if the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business. 42 U.S.C. § 12112(b)(5)(A).

In the present case, Jiménez argues that IHG had a duty to accommodate him by placing him in a low-allergen environment, meaning, one with "light perfumes without fixers, no iris root, scents and air refreshers", and also requested "the use of activated charcoal prefilters in the working area, to avoid the application of perfumes in the working area and to avoid scheduling [him] in high antigen-load days." *See* Docket No. 58.

Plaintiff has not offered sufficient evidence to establish how IHG might have accomplished the accommodation,

which entails a showing of how "feasible" the accommodation is "for the employer under the circumstances." *See Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 259 (1st Cir. 2001). Given the nature of IHG's business, it seems highly impractical to police the scents that both employees and clients use. Jiménez alleges that he was only bothered by the scents of some of his co-workers, and was never afflicted from the smell emanating from a client. However, he failed to specifically identify which scents or smells were the culprits behind his condition, thereby making it extremely onerous for his employer to identify a proper manner for controlling the allergens that allegedly triggered his "disability."

For its part, IHG provided ample evidence of the difficulties in accommodating Jiménez' condition, particularly in light of the nature of his job, and the burden it would impose on other employees. "The ADA does not require an employer to accommodate a disability by foregoing an essential function of the position or by reallocating essential functions to make other workers' jobs

more onerous." *Feliciano*, 160 F.3d at 785.

Taking all these factors into account, the Court concludes that Jiménez failed to establish that he is a qualified individual under the ADA and, therefore, he is not entitled to relief under the Act.[19]

**(2) Retaliation**

Jiménez also claims that IHG retaliated against him for engaging in protected activity, specifically, making continuous requests for reasonable accommodation, and filing an EEOC charge.

"An ADA plaintiff need not succeed on a disability claim to assert a claim for retaliation." *Wright v. CompUSA, Inc.*, 352 F.3d 472, 477 (1st Cir. 2003)(citing *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir.1997)). The ADA retaliation provision states that "[n]o person shall discriminate against any individual because such individual has opposed any act

---

19 Although IHG's Motion for Summary Judgment raised other grounds for the relief sought, such as failure to exhaust, we need not discuss them insofar as we conclude that Jiménez cannot avail himself of the remedies under the ADA.

or practice made unlawful by [the ADA] or because such individual made a charge ... under [the ADA]." 42 U.S.C. § 12203(a). ADA retaliation claims are analyzed within the same framework employed for retaliation claims under Title VII. *Soileau*, 105 F.3d at 16.

To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Soileau*, 105 F.3d at 16.

It is undisputed that Jiménez engaged in protected conduct,[20] and that he resigned. Although resigning is not considered an adverse employment action, Jiménez avers that his resignation is actually a constructive discharge.

---

20 The First Circuit has held that requesting an accommodation, even without the filing of a formal charge, is behavior protected from retaliation. *Wright*, 352 F.3d at 477 (citing *Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 177 (1st Cir. 2003)).

To establish his claim of constructive discharge in violation of Title VII, Jiménez must prove that "(1) he she suffered harassment or discrimination so intolerable that a reasonable person in the same position would have felt compelled to resign ...; and (2) his reaction to the workplace situation… was reasonable given the totality of circumstances... ." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 139 (2004).

Even though we have searched the record thoroughly, we fail to find a basis for Jiménez' claim of constructive discharge. For instance, there is no controversy as to the fact that Jiménez' salary or benefits were not reduced. "Salary considerations are important in determining whether a job transfer can support a claim of constructive dismissal." *Serrano-Cruz v. DFI Puerto Rico, Inc.*, 109 F.3d 23, 26 (1st Cir. 1997)(citation omitted). Furthermore, Jiménez merely makes reference to "being admonished for trying to protect his health," *see* Docket No. 9 at ¶18(f), and points to several comments regarding his intolerance of strong odors; *see*

Jimenez' Separate Statement of Additional Facts, Docket No. 57-1, at ¶¶ 16-17; Jiménez' Declaration at ¶¶ 40-42. In addition, the Amended Complaint does not set forth specific instances for workplace harassment that rise to the level of pervasiveness needed to succeed on a hostile work environment claim.

As IHG correctly points out, Jiménez has not established that his working conditions were so "difficult and unpleasant" that a reasonable person in that position would have had no choice but to resign. *See De La Vega v. San Juan Star, Inc.*, 377 F.3d 111, 117 (1st Cir. 2004)(quoting *Lee–Crespo v. Schering–Plough Del Caribe, Inc.*, 354 F.3d 34, 45 (1st Cir.2003)). After all, "[i]t is not enough that the plaintiff suffered 'the ordinary slings and arrows that workers routinely encounter in a hard, cold world.'" *Id*.

The Court also fails to see the causal connection between Jiménez' separation from his job and his request for accommodation. Even viewing the record in the light most favorable to Jiménez, no reasonable juror could find that IHG

constructively discharged Jiménez in retaliation for his EEOC charge, or for his requests for reasonable accommodation.

### (3) Supplemental Claims

Because the Court finds that plaintiff's federal claims do not survive summary judgment, the state law claims are dismissed as well.

### IV.  Conclusion

For the reasons stated herein, we grant IHG's Motion for Summary Judgment at Docket No. 44.

IT IS SO ORDERED AND ADJUDGED.

In San Juan, Puerto Rico, this 30th day of November, 2017.

S/ SILVIA CARREÑO-COLL

UNITED STATES MAGISTRATE JUDGE